(No. 12879.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERA BOND, Plaintiff in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. CRIMINAL LAW—*what is sufficient to sustain charge of conspiracy. to steal automobiles.* Proof that one of the defendants had agreed to buy all the automobiles his co-defendants and two other men could deliver to him, having been told by them that it was easy to steal automobiles if they had someone to receive them, is sufficient to show a conspiracy to steal automobiles, and the time and place of the thefts and the persons who committed them are not material matters.

2. SAME—*when an error in permitting a witness to testify as to his previous good conduct is not prejudicial.* Error in permitting one of the alleged conspirators, who is not included in the indictment but who has given damaging testimony against one of the defendants on trial, to state, in answer to a question by the State's attorney, that he did not think he had done anything wrong or been charged with crime until after he had met such defendant, is not prejudicial.

3. SAME—*the actions of one conspirator in furtherance of conspiracy may be proved against the others.* Where the evidence shows that a witness, though not included in the indictment, was from the beginning connected with the conspiracy charged in the indictment, proof of his actions in furtherance of the conspiracy is admissible against all the others.

4. SAME—*when witnesses may testify to contents of letter written by a defendant.* Where a letter written by a defendant is in the hands of his attorneys he cannot be required to produce it, and if he does not do so testimony of witnesses as to the contents of the letter may be received as secondary evidence.

5. SAME—*plaintiff in error should show why his offered testimony was material.* Refusal of the trial court to allow a defendant to testify to certain conversations in explanation of some of his transactions cannot be relied upon as prejudicial error, where the record does not show any facts which would make the conversations material.

6. SAME—*when improper conduct of assistant State's attorney is not ground for reversal.* Improper remarks and conduct of the assistant State's attorney during the trial of a criminal case will

not be ground for reversal even though deserving of censure by the court, where the defendant is proved guilty beyond a reasonable doubt and the jury could not have reached a different verdict from a consideration of the evidence.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding.

BERNARD J. MAHONY, and CHARLES P. R. MACAULAY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN K. MURPHY, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Era Bond and William Ravencamp were indicted for conspiring with Lemuel Nutter to steal automobiles. Bond was tried alone and was convicted and sentenced to be imprisoned in the penitentiary two years, to pay a fine of $1000, and to work out the fine in the penitentiary at $1.50 a day if not paid. The Appellate Court reversed the judgment for error in requiring the fine, if not paid, to be worked out in the penitentiary and remanded the cause, with directions to enter a proper judgment upon the verdict for the fine and imprisonment. This writ of error is prosecuted to reverse the judgment of the Appellate Court. ·

Plaintiff in error contends that the evidence does not sustain the charge in the indictment of a conspiracy to steal automobiles, but that the most that can be claimed is that Bond agreed to buy stolen automobiles from Ravenscamp, Nutter, Harris and Ehrenheim, without regard to their having been stolen by any of the confederates personally·

or by others. There is evidence in the record of an agreement made in the city of Chicago by Bond, who lived in Minneapolis, to buy all the automobiles the conspirators could deliver to him at Minneapolis for $500 each, cars ranging upward from $1000, particularly Buicks and Hudsons, which he could handle as fast as the conspirators could get them to him and would take by the car-load if they could get them for him, and that one of the men said to Bond that they could steal all the cars he wanted; that they could go out on the street any time and pick up automobiles as long as they had somebody to receive them. It is apparent that such a conspiracy contemplated the stealing of automobiles, and it is immaterial whether they were to be stolen personally by the conspirators or by their procurement. The general scheme of creating a market for stolen automobiles, in which the plaintiff in error should be the receiver and the other conspirators should furnish the stolen cars, involved a series of thefts. The stealing of cars to be disposed of in accordance with the agreement of the conspirators was within the scope of the conspiracy, and the persons actually committing such thefts, the time and place of their occurrence and the particular means by which the crimes were accomplished are not material.

Harris and Ehrenheim, two witnesses for the prosecution, who were engaged in the conspiracy but were not included in the indictment, gave very damaging testimony against the plaintiff in error. After Ehrenheim had been cross-examined and had stated that two indictments for stealing automobiles were pending against him on which he had not been tried, and that he expected to go to the penitentiary, the State's attorney asked him if he had ever done a dishonest act before November 1, 1915, when he met the plaintiff in error. Over objection he was permitted to answer that he did not think he had ever done anything wrong and that he had never been indicted or charged with any larceny or any offense against the State of Illinois or in its

jurisdiction until after he met the plaintiff in error. It is admitted that this testimony was improperly received. No ·reason is suggested why a State's attorney should have asked such question. The only answer to this error is that it did the plaintiff in error no harm, and we regard this as a sufficient answer in this case. The witness' credit with the jury, in view of his other testimony, could not have been improved by his answers to these questions.

Harris and Ehrenheim testified that they bought two stolen cars which they drove to Minneapolis and shipped at Bond's direction to a man at Lambert, Montana. Bond was to pay them $1000 as soon as he heard the cars were received, but there was some delay, and Bond suggested to them, while they were waiting, that they get a car to be sold to a man named Smith. Over the plaintiff in error's objection the People were permitted to prove that the witnesses did steal a car in Minneapolis for this purpose. It is insisted that this was error, because neither Ravenscamp nor Nutter, the only other parties alleged in the indictment to have conspired with the plaintiff in error, knew anything about the transaction and it was an entirely independent crime. Though Harris and Ehrenheim were not alleged in the indictment to be co-conspirators, the evidence as to the conspiracy shows that they were connected with it from the beginning, and their actions, as well as all the actions of any of the fellow-conspirators in carrying out the purpose of the conspiracy, were admissible against all the others. The theft of the automobile in Minneapolis was only carrying out the purpose of the original conspiracy, and the evidence was properly admitted.

Objection was made to a letter purporting to have been written to C. A. Smith by the plaintiff in error but it was admitted in evidence. The letter had no connection with the case and should not have been received in evidence, but it did no harm to the plaintiff in error. It only incumbered the record.

Harris and Ehrenheim testified to the contents of a letter written by the plaintiff in error to his attorneys, Cary & Ginsberg, in Minneapolis. It was objected that their testimony was not the best evidence of the contents of the letter. It appeared, however, that the letter was in the possession of the plaintiff in error's attorneys and was beyond the jurisdiction of the court. Secondary evidence is admissible of the contents of a document which it is out of the power of the party to produce; and this rule applies to papers out of the jurisdiction of the court if due effort has been made to obtain them. (*Bishop* v. *American Preservers' Co.* 157 Ill. 284.) Here the letter was in the hands of the attorneys and plaintiff in error could not be required to produce it.

The plaintiff in error insists that the court erroneously refused to allow him to testify to the contents of the same letter. He was asked to state the contents of the letter, but upon objection the court said that there was no showing that he could not produce it if he wanted to. He was then asked what was the last he saw of the letter, and answered that he gave it to Cary & Ginsberg. He then went on to explain how he came to write the letter and was not again asked as to its contents.

The court refused to allow the plaintiff in error to give a conversation which he had with a man named Wheatly in explaining how he came to buy a car from a man who called himself Wallace, and another conversation to explain why he sent $50 by telegraph to Nutter, under the name of Phillips, at Schurlsberg, Wisconsin. The record does not disclose the nature of these conversations, their connection with the transactions, or any reason why they were necessary to explain the plaintiff in error's motives. If they were material, the facts which made them so should have been made to appear in the record.

Complaint is justly made of the conduct of the assistant State's attorney who tried the case. He referred in

his closing argument to the plaintiff in error as a man of wealth, who employed five of the cleverest lawyers money could get, paying them in this one case probably fifty times the salary of the assistant State's attorney for a year, and he insisted that the prosecution could not put Lee (who was mentioned in the evidence in connection with the cars) on the witness stand but that the plaintiff in error would have no trouble in getting him if he wanted him,—though there was no evidence to justify the statement,—and he repeatedly tried to impress upon the jury throughout the trial, by innuendo and insinuation, facts not shown by the evidence and incompetent for their consideration. The court sustained many objections to the State's attorney's conduct. Such breaches of professional propriety tend to prevent a fair trial and deserve the censure of the court. In cases where the evidence is close and the verdict may have been obtained by such improper means a new trial should be granted. In this case the plaintiff in error was proved guilty beyond a reasonable doubt. The jury could not have reached a different verdict from a consideration of the evidence, and upon a consideration of the whole record the judgment ought not to be reversed for the improper action of the State's attorney.

Two instructions were asked to the effect that no inference could be drawn against the plaintiff in error for his failure to produce witnesses who were beyond the reach of process or could have been called by the prosecution as readily as by the defendant. There was no evidence to which they applied and they were properly refused.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*