THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES EDWARD BURLESON, Defendant-Appellant.

Fourth District   No. 14041

Opinion filed July 18, 1977.

Richard J. Wilson and Ann L. Carr, both of State Appellate Defender's Office, of Springfield, for appellant.

Roger W. Thompson, State's Attorney, of Lincoln (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Charles Edward Burleson, was charged in a two-count information filed December 8, 1975, with conspiracy to commit armed robbery and attempt armed robbery, violations of sections 8—2(a) and 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 8—2(a), 8—4(a)). The two offenses were alleged to have occurred on September 16, 1975. On April 21, 1976, a third count was added to the information charging the defendant with participating in a second conspiracy to commit armed robbery on September 13, 1975, another violation of section 8—2(a) of the Code (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a)).

After being tried before a Logan County jury, the defendant was found guilty on all three counts contained in the information and judgments were entered on the three verdicts. At the sentencing hearing on June 20, 1976, the State's Attorney recommended that the defendant be concurrently sentenced only for the attempt committed on September 16, 1975, and for the conspiracy committed on September 13, 1975. Defense counsel stated that only one sentence could be imposed for the offenses of September 16, 1975, and that another sentence could be imposed for the conspiracy of September 13, 1975. Thereafter, the sentencing judge stated that he was imposing a *1- to 3-year sentence for the conspiracy of September 16, 1975*, to run concurrently with a 1- to 5-year sentence for the attempt committed that same day. A written sentence order was entered which, however, recited that the defendant was sentenced to a 1- to 5-year sentence for the attempt of September 16, 1975, to run concurrently with a *1- to 3-year sentence for the conspiracy of September 13, 1975*.

The facts pertinent to this appeal are reflected in the trial testimony of defendant's alleged co-conspirator, Bruce Brown. Brown testified that he and the defendant agreed to rob the Middletown State Bank. Pursuant to that agreement, the two "cased" the bank on September 11, 1975. They decided to use two cars in the robbery. One would be left on a rural road near Middletown with a change of clothing for each conspirator. From

that location, the two would proceed to the bank wearing nylon stockings and stocking caps over their heads. The defendant agreed to secure a shotgun for use in the robbery and Brown agreed to secure the disguises and a container for the money they expected to remove from the bank. They also decided to commit the crime on Saturday, September 13, 1975.

On September 13, 1975, the conspirators initiated their plan, but decided not to rob the bank on that day because they noticed too many people in town and around the bank. Instead, they made a practice run of their approach to and escape from the bank after agreeing that they would try again on Tuesday, September 16, 1975.

On September 16, 1975, the defendant and Brown again parked their cars along a rural road, changed clothing and drove into the town of Middletown in a single car with a white suitcase, shotgun and disguises consisting of the nylon stockings and stocking caps. When they arrived in town, they drove to the Middletown State Bank, exited from the car and approached the bank's front door. Brown carried the suitcase and the defendant carried the shotgun. As the duo neared the front door, however, a man bolted the door from the inside. Thereafter, the defendant and Brown scrambled back into the car and returned to their second car which was still parked along the rural road where they had commenced their escapade. Within minutes, Brown was arrested after being chased by the police. The defendant was arrested a few days later.

On appeal, the defendant raises a single issue for our review: whether his conviction for the September 13, 1975, conspiracy to commit armed robbery should be vacated because the alleged conspiracy arose from the same course of conduct that formed the basis for his attempt armed robbery convictions.

Section 8—2(a) of the Criminal Code of 1961 provides in pertinent part:
"A person commits conspiracy when, with intent that an offense be committed, he *agrees* with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an *act in furtherance* of such agreement is alleged and proved to have been committed by him or by a co-conspirator." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a).)

Section 8—4(a) of the Code provides:
"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a).)

Both of the quoted sections are contained in that part of the Code which concerns inchoate or anticipatory offenses. Another of those sections,

section 8—5 of the Code provides that "[n]o person shall be convicted of both the inchoate and the principal offense." Ill. Rev. Stat. 1973, ch. 38, par. 8—5.

■■■ In Illinois, in order for a defendant to be convicted for the offense of conspiracy, the State must establish three elements beyond a reasonable doubt: (1) that the defendant intended to commit an offense; (2) that the defendant and another person entered into an agreement to commit the offense; and (3) that one of the co-conspirators committed an act in furtherance of the agreement. (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a).) In order for a defendant to be convicted for the offense of attempt, the State must only establish two elements beyond a reasonable doubt: (1) that the defendant intended to commit an offense; and (2) that the defendant took a "substantial step" toward committing that offense. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a).) In comparing these two sections of our Criminal Code, we note that the conspiracy provision requires a lesser step to fulfill the act requirement, while the attempt provision requires "a substantial step" toward the commission of the offense. In each situation, as in situations involving other inchoate offenses, the law makes possible some preventive action by the police and courts before a defendant has come dangerously close to committing the intended crime. LaFave & Scott, Criminal Law §59, at 426 (1972).

Although section 8—4(a) does not define "substantial step," Illinois courts have attempted to make the term more precise. In *People v. Woods* (1962), 24 Ill. 2d 154, 158, 180 N.E.2d 475, our supreme court stated that the mere preparation to commit a criminal offense does not constitute a "substantial step" for purposes of the attempt statute. In *People v. Lonzo* (1974), 59 Ill. 2d 115, 117, 319 N.E.2d 481, 483, the court considered the case of a defendant charged with attempt theft after he was alleged to have attempted to exert unauthorized control over bicycles in a bicycle storage area. Initially, the court noted that it is not possible to charge an inchoate offense with the same particularity as a completed offense. The court then held that the record adequately established the defendant's guilt because he was apprehended inside an enclosure which he had unlawfully entered in order to commit the offense of theft. In *People v. Delk* (1976), 36 Ill. App. 3d 1027, 1033, 345 N.E.2d 197, the court held that entering a tavern while armed constituted a substantial step toward the commission of an armed robbery.

Analysis of these cases would seemingly lead one to suspect that the "substantial step" requirement, in order to amount to more than mere preparation, requires some sort of entry into an enclosure or structure for the purpose of committing a crime. We note, however, that section 5.01(2) of the Model Penal Code contains a list of behavior constituting a

"substantial step" which is strongly corroborative of the actor's criminal purpose. Noted on that list is:

" * * * possession * * * of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession * * * serves no lawful purpose of the actor under the circumstances * * *." Model Penal Code §5.01(2)(f) (Proposed Official Draft 1962).

Here, the defendant and Brown did not enter the bank building on September 16, 1975, although they were in possession of a shotgun, suitcase and disguises which were in place when they approached the bank building. We find these acts sufficient to constitute a "substantial step" toward the commission of an armed robbery in the bank.

In this case, the defendant was also charged with membership in two conspiracies having as their objects the armed robbery of the Middletown State Bank on two separate dates, September 13 and 16, 1975.

In *People v. Perry* (1961), 23 Ill. 2d 147, 177 N.E.2d 323, our supreme court stated:

"A conspiracy once formed is presumed to exist whenever and wherever one of the conspirators does some act in furtherance of its purpose. Since the overt act is a renewal of the conspiracy, the offense is continuous so long as overt acts in furtherance of its purpose are done." (23 Ill. 2d 147, 155, 177 N.E.2d 323, 328.)

*Perry*, however, does not say that an individual cannot be convicted, under proper circumstances, for being a member of two conspiracies where the elements of a conspiracy are present in two separate courses of conduct in which the individual has been engaged. In cases where an individual enters into an agreement or agreements with another to commit an offense with the intent that the offense be committed, followed by the commission of an act in furtherance of the agreement by either conspirator, then a conspiracy has been created. *People v. Graham* (1971), 1 Ill. App. 3d 749, 752, 274 N.E.2d 370.

It is the agreement to commit an offense or offenses which defines the scope of every conspiracy and the mere fact that separate overt acts have been committed in furtherance of a single conspiracy does not create a new conspiracy. *Braverman v. United States* (1942), 317 U.S. 49, 53, 87 L. Ed. 23, 28, 63 S. Ct. 99, 102.

Although other courts have construed *Braverman* to mean that an agreement to violate the same or different statutes on different occasions constitutes a single conspiracy. (*People v. Cossey* (1950), 97 Cal. App. 2d 101, 110-11, 217 P.2d 133, 140-41; *United States v. Mori* (5th Cir. 1971), 444 F.2d 240, 245), we distinguish those decisions on the ground that the instant defendant entered two separate conspiracies, each of which was

composed of the three elements set forth in section 8—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a)). On September 11, 1975, the defendant and Brown, having the necessary intent, agreed to rob the bank on September 13, 1975. In furtherance of this agreement, they committed the overt acts of "casing" the bank, procuring a weapon and disguises, and going to the bank on September 13, 1975, to commit the crime. This first conspiracy was abandoned when the conspirators observed a large number of persons in and around the bank. Thereafter, the same conspirators, with the necessary intent, agreed to rob the bank on September 16, 1975, after which they committed the overt acts of preserving the disguises, participating in a practice escape from the bank and in approaching the bank on September 16, 1975. The latter act also constituted the "substantial step" necessary to establish the offense of attempt armed robbery, of which the second conspiracy was a lesser included offense.

We note that the Supreme Court has held that an agreement to violate sections 1 and 2 of the Sherman Act (15 U.S.C. §§1, 2 (1970)) constituted separate statutory conspiracies even though the objects of the conspiracies partly overlapped. (*American Tobacco Co. v. United States* (1946), 328 U.S. 781, 788, 90 L. Ed. 1575, 1582-83, 66 S. Ct. 1125, 1128-29.) In disposing of the appellant's contention in *American Tobacco* that convictions for the two violations (a conspiracy to fix prices and a conspiracy to exclude actual and potential customers from the tobacco industry) defied the teaching of *Braverman,* the Court looked to see whether there was sufficient evidence on which the trial court could have based its finding that the elements of separate conspiracies had been established. After finding that such evidence was present, the Court affirmed both convictions.

We also note that a similar result was reached in *United States v. Samuel Dunkel & Co.* (2d Cir. 1950), 184 F.2d 894, 897, where the defendant was convicted for conspiring to deliver rejected egg powder to the government and for conspiring to obtain payment from the government on false claims arising from those deliveries. Although the court held that deliveries and claims made on seven different occasions did not constitute seven different conspiracies, the court did hold that the evidence reflected that the defendant entered into separate agreements to commit the two offenses.

■■ In *People v. Bond* (1919), 291 Ill. 74, 125 N.E. 740, our supreme court held that the time at which the overt act was actually committed was immaterial to determining the scope of a conspiracy to commit a series of thefts so long as a single agreement governed the conspiracy to commit the thefts. In *Bond,* the court stated:

"It is apparent that such a conspiracy contemplated the stealing of

automobiles, and it is immaterial whether they were to be stolen personally by the conspirators or by their procurement. The general scheme of creating a market for stolen automobiles, in which the plaintiff in error should be the receiver and the other conspirators should furnish the stolen cars, involved a series of thefts. The stealing of cars to be disposed of in accordance with the agreement of the conspirators was within the scope of the conspiracy, and the persons actually committing such thefts, the time and place of their occurrence and the particular means by which the crimes were accomplished are not material." (291 Ill. 74, 76, 125 N.E.2d 740; accord, *People v. Kahn* (1930) 256 Ill. App. 415, 418.)

This statement from *Bond*, however, is not entirely complete because it does not, like *Samuel Dunkel*, focus on the scope of the agreement to define the limits of the conspiracy. We, therefore, hold that a person charged with multiple conspiracies cannot be convicted of more than a single conspiracy if he has with the necessary intent entered into a single agreement to commit a crime even if multiple overt acts are committed in furtherance of that agreement. (*Bond; Kahn; Braverman; Cossey; Mori.*) We further hold, however, that a person charged with multiple conspiracies can be convicted of those multiple conspiracies if, with the necessary intent, he entered into multiple, although partially overlapping agreements to commit crimes so long as overt acts are committed in furtherance of those agreements. (*Samuel Dunkel; American Tobacco; Braverman; Bond.*) It is this latter situation that is presented in the instant case.

As previously noted, section 8—5 of the Code prohibits a defendant's conviction for an inchoate offense and the principal offense. (*People v. Basile* (1974), 21 Ill. App. 3d 273, 281, 315 N.E.2d 293.)

Here, however, the defendant has been convicted for two inchoate offenses and not for a principal offense. Recently, our supreme court stated that when more than one offense arises from a single series of closely related acts and when the offenses, by definition, are not lesser included offenses, convictions having concurrent sentences may be entered. (*People v. King* (1974), 66 Ill. 2d 551, 363 N.E.2d 838.) Lesser included offenses are defined in section 2—9 of the Code as an offense which:

"(a) Is established by proof of *the same or less than all of the facts* or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 38, par. 2—9.

■■ Here, as already mentioned, the inchoate offenses of attempt and conspiracy require some act for criminal liability to attach to the actor. For an attempt to be committed, "a substantial step" in furtherance of the criminal objective must occur. For a conspiracy to exist, some act amounting to at least a lesser step is required. In the instant case, however, the State has not relied on the same conduct of the defendant to establish the conspiracy to rob the bank on September 13, 1975, and the attempt to rob which was committed on September 16, 1975. We do not view the conspirators' actions in terms of a single course of conduct. Rather, the conspirators' actions originate in separate agreements or impulses to rob the bank on separate dates. With their attempt to rob the bank on September 13, 1975, the conspirator's first agreement to rob the bank came to an end. The attempt of September 16, 1975, was not the result of the original agreement, but of a fresh agreement which was entered into after the attempt of September 13, 1975. (*Cf. Blockburger v. United States* (1932), 284 U.S. 299, 302-03, 76 L. Ed. 306, 308-09, 52 S. Ct. 180, 181.) Since we have held that the aforementioned offenses arise from separate courses of conduct, we, accordingly, affirm the defendant's convictions for the conspiracy of September 13, 1975, and for the attempt armed robbery of September 16, 1975. (*King.*) In addition, we reverse defendant's conviction for the conspiracy of September 16, 1975, because it is a lesser included offense of attempt. *King; People v. Grady* (1976), 43 Ill. App. 3d 473, 357 N.E.2d 230.

Finally, we note that the fact that the defendant and Brown failed to complete their armed robbery scheme does not prevent the defendant's conviction for inchoate offenses arising from that conduct. In his classic lectures on the common law, Mr. Justice Holmes addressed this precise question by framing two hypothetical problems. In the first, Holmes observed that:

"* * * lighting a match with intent to set fire to a haystack has been held to amount to a criminal attempt to burn it, although the defendant blew out the match on seeing that he was watched." (Holmes, The Common Law 67 (1881).)

In the second, Holmes stated that:

"If a man starts from Boston to Cambridge for the purpose of committing a murder when he gets there, but is stopped by the draw [bridge] and goes home, he is no more punishable than if he had sat in his chair and resolved to shoot somebody, but on second thoughts had given up the notion. (Holmes, at 68.) ·

In explaining the proper resolution of these hypothetical questions, Holmes stated:

"Eminent judges have been puzzled where to draw the line, or even to state the principle on which it should be drawn, between

the two sets of cases. But the principle is believed to be similar to that on which all other lines are drawn by the law. Public policy, that is to say, legislative considerations, are at the bottom of the matter; the considerations being, in this case, the nearness of the danger, the greatness of the harm, and the degree of apprehension felt. When a man buys matches to fire a haystack, or starts on a journey meaning to murder at the end of it, there is still a considerable chance that he will change his mind before he comes to the point. But when he has struck the match, or cocked and aimed the pistol, there is very little chance that he will not persist to the end, and the danger becomes so great that the law steps in." Holmes, at 68-69.

The instant case is similar to Holmes' haystack and match example in that there was only a slight chance, if any, that the defendant and Brown would change their minds and decide not to rob the bank after they had donned their disguises, armed themselves with a loaded shotgun and stepped to the door of the very bank which they had determined to rob. Clearly, the danger of an imminent robbery could be no closer, the harm and apprehension no greater.

The convictions and sentences for the attempt armed robbery of September 16, 1975, and for the conspiracy to commit armed robbery on September 13, 1975, are affirmed. The conviction for the conspiracy to commit armed robbery on September 16, 1975, is reversed.

Affirmed in part. Reversed in part.

GREEN, P. J., and MILLS, J., concur.