THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND REYES *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 78-1838, 79-236 cons.

Opinion filed December 9, 1981.

Marc M. Barnett, Marvin J. Glass, Dennis A. Berkson, and Charles K. Piet, all of Barnett, Ettinger, Glass, Berkson and Braverman, Ltd., of Chicago (Caroline Jaffe, of counsel), for appellant Raul Gonzalez.

James J. Doherty, Public Defender, of Chicago (Michael McInerney, Assistant Public Defender, of counsel), for appellant Raymond Reyes.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Michael K. Demetrio, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendants Raul Gonzalez, Raymond Reyes and Jose Murrillo were charged in a joint indictment with murder and attempt armed robbery. Gonzalez and Reyes were tried by a jury and Murrillo was tried by the court. The jury found Gonzalez guilty of murder and attempt armed robbery. It found Reyes guilty of attempt armed robbery, but not guilty

of murder. Murrillo was also found guilty of attempt armed robbery. Gonzalez was sentenced to a term of 25 to 50 years imprisonment for murder and two to six years imprisonment for attempt armed robbery. Reyes was sentenced to two to six years imprisonment. Gonzalez and Reyes now appeal.

The facts established at trial follow. At the intersection of Fullerton and Ridgeway streets in Chicago on February 23, 1976, Timothy Glover was shot. When police officer Joseph Vegas arrived at the scene at approximately 6:30 p.m., Glover was lying on the sidewalk in front of Hendricksen's drugstore which is located on the northeast corner of that intersection. Glover was transported to a hospital, where he died.

Several young men were in the vicinity of the drugstore at the time of the shooting, including the victim and State's witnesses Thomas Stump, Robert Shaw, Jay Dwyer, and John Mikucki.

Thomas Stump testified that shortly before 6:30 p.m., he left the drugstore and went to a basketball court located three doors east of the drugstore. He was playing basketball when he heard a shot. Then he ran into the alley behind the basketball court and looked west. He observed two men standing in the alley near Ridgeway. Defendant Reyes was one of these men. The man with Reyes, whom Stump was unable to identify, had a rifle and wore a long green coat. The two men then moved forward in the direction of the drugstore so that they were out of his eyesight. Then he heard five shots fired, and after that, he saw Reyes and the other man running north on Ridgeway. The other man had the rifle. Subsequently, Stump went to the scene in front of the drugstore. A short time later, he found five empty shell casings near where the alley intersected Ridgeway. He gave them to a police officer.

Robert Shaw testified that at approximately 6:30 p.m., he was standing outside the drugstore. Glover was inside. While standing there he saw two male Puerto Ricans approach from the south and walk by the drugstore. One was wearing a long, green trench coat and the other a dark jacket. Shaw entered the drugstore and informed individuals therein that two Puerto Ricans were walking north on Ridgeway. Then he exited the drugstore with John Mikucki. Mikucki walked north on Ridgeway in the middle of the street, and Shaw walked in that direction on the sidewalk near a building and then walked out toward the street. Shaw then saw the two Puerto Ricans step from behind a building into the middle of an alley adjacent to the building. The one in the trench coat raised his right hand, and Shaw heard a shot. Shaw then ran southwest. As he was running, he heard four or five other shots. Shaw identified Raul Gonzalez as one of the two individuals who approached the drugstore.

Jay Dwyer testified that at 6:30 p.m., he was inside the drugstore. He heard a shot. At that time, Mikucki, Shaw and Glover were outside the

drugstore. Then Dwyer ran outside and around the corner so that he was facing north on Ridgeway. He saw two males near the alley which intersects that street. One had an afro and the other a long green army coat. At this time, Timothy Glover was immediately in front of Dwyer, on Ridgeway facing north. Dwyer heard approximately five shots, and he ran back around the corner. He saw Glover also coming around the corner. Glover was stumbling, and he fell to the ground.

John Mikucki testified that at 6:30 p.m. he was inside the drugstore. He observed two Puerto Rican males walk past the drugstore and proceed north on Ridgeway. One was wearing a long army training coat and the other a dark jacket. He told others inside the drugstore that there were two male Puerto Ricans walking down Ridgeway. Mikucki went outside, and Robert Shaw went with him. Mikucki walked into the middle of Ridgeway and proceeded north. He did not see the two Puerto Rican males. When he was approximately 20 feet from the alley, the two individuals he had seen stepped out from the alley and the corner of a building. They said, "I. G. Love," but Mikucki did not say anything. Then Mikucki heard a shot fired in his direction, but he did not know who fired it. He turned and ran behind a parked car on the west side of Ridgeway. He observed the two individuals walk a few feet south. Then he saw a long black object underneath the coat, apparently a reference to the long army training coat. He heard five more shots and started running south on Ridgeway toward Fullerton. Mikucki identified defendants Reyes and Gonzalez as the two individuals he had observed, but he could not identify which one fired the weapon.

Michael Wilson testified that he lived near the drugstore in February 1976. At 6:30 p.m. on February 23, 1976, he was walking south down the alley between Ridgeway and Hamlin streets with his dog. He observed a car in the "T" intersection of that alley and an east-west alley that runs parallel to Fullerton and is located immediately north of that street. As he passed the car and turned west into the east-west alley, he heard a shot. He turned so that he was facing east, and he observed a man wearing a long green coat firing a rifle. As Wilson continued down the alley, he heard more shots fired.

Police officer James Adams testified that on February 23, 1976, he arrived at the crime scene in response to a radio call of "shots fired." While there, a youth approached him and handed him five empty Imperial .3240 caliber rifle cartridge casings. Adams also observed one Officer Noonan recover another spent Imperial .3240 cartridge casing.

Police officer Richard Fritz testified that he and his partner, Leonard Wojewocki arrested the defendants on February 23, 1976. He testified that a citizen told him and his partner that he had seen two males run into a nearby school yard and that one was carrying a rifle. Otherwise, his

testimony regarding the circumstances of the arrests is substantially similar to that given by Wojewocki at the hearing on defendant's motion to quash arrest described later in this opinion.

Testimony by Kelly Glover, the victim's brother, revealed that Timothy Glover that evening was wearing a Calhoun Park High School sweater. Donald Smith of the Chicago police department, an expert in the field of firearms identification, testified that he examined the rifle recovered from defendants Gonzalez and Reyes and the six shell casings recovered at the scene of the slaying. It was his opinion that these shell casings could only have been fired from that rifle. Smith also testified that the rifle was designed in such a way that it must be cocked by its user each time it is fired.

Assistant State's Attorney Michael Robbins testified that on February 23, 1976, both Gonzalez and Reyes made written statements to him. In the course of his testimony, Robbins read these statements to the jury.

Gonzalez in his statement stated that on the evening of February 23, 1976, he was in the area of Fullerton and Ridgeway streets. At that time, he was wearing a long green coat and he had a rifle with him. His purpose for going to that location with the rifle was to get his sweater, which had been taken from him in the summer of 1975. Raymond Reyes, a friend, went with him. They went to the corner where the drugstore was located because Gonzalez had seen the sweater there at approximately 4 p.m. on the same day. When they arrived, Gonzalez looked in the drugstore and saw approximately seven young men. Gonzalez and his friend started to run. At that time, the rifle hit a wall and fired. Gonzalez started to run again, and then he fired three or four times while trying to run. After each shot, he cocked the rifle again. He ran across the street to what he believed was a church and school. He had the rifle when he was arrested by the police.

Defendant Reyes, in his statement, said that he met Gonzalez at approximately 5:30 or 6 p.m. on February 23, 1976. At that time, Gonzalez had a rifle with him, and Gonzalez was wearing a long green army coat. The rifle was under the coat. Their purpose for going to the intersection of Fullerton and Ridgeway streets was to get Gonzalez' sweater. Their plan was to wait for the people to come out (apparently a reference to the drugstore) and then to hold them up with Gonzalez' rifle. He and Gonzalez went to that intersection. They walked past some people there, and then these people began to chase them. These people had the sweater. At this time Gonzalez fired the rifle. Reyes heard four shots as he waited for Gonzalez in the alley. He ran with Gonzalez to a school yard and was arrested. Reyes also stated that Gonzalez explained the plan to him when they were walking to the intersection of Fullerton and Ridgeway streets.

After both defendants' statements were read, the trial judge instructed the jury that each statement was to be considered only against the individual who made it and not against the other individual.

David Shields of the Chicago police department was the sole witness called by the defendant Gonzalez. He testified to alleged prior inconsistent statements made by State's witnesses John Mikucki, Thomas Stump and Robert Shaw. Defendant Reyes chose not to present any evidence.

For the reasons set forth below, we affirm in part and reverse and remand in part. We first address the arguments raised by defendant Gonzalez.

I

Defendant Gonzalez first contends that the trial court erred in admitting his statement into evidence. He makes four arguments in support of this contention: that his statements were given subsequent to an unlawful arrest; that his written and oral statements were obtained by coercion; that the defendant had not been properly advised of his constitutional rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; and that the trial court erred in conducting separate hearings before different judges on his motion to suppress statements and his motion to quash his arrest.

First we consider the legality of defendant's arrest. Gonzalez contends that his statement was inadmissible because it was the fruit of an unlawful arrest, that the police lacked probable cause for the warrantless arrest. At the hearing on Gonzalez' motion to quash the arrest, the sole witness on the issue of probable cause was Chicago police officer Leonard Wojewocki, the partner of Officer Richard Fritz. Wojewocki testified that on February 23, 1976, at approximately 6:15 p.m., he and his partner received a message over police radio that shots had been fired at Ridgeway and Fullerton streets. They were in a marked police car and approximately five blocks from that location. Responding to the call, they proceeded south on Ridgeway. Before reaching Fullerton, they were stopped by a citizen who was not known to the officers and whose identity was still not known at trial. This unidentified citizen told the officers that two youths, one wearing a long green jacket and carrying a rifle, had just run into the school yard. As they were talking with the citizen, the officers received a broadcast over the police radio that a boy had been shot. They proceeded into the school yard which was located two or three hundred feet from the intersection of Fullerton and Ridgeway, and ordered the men to come out of an alcove. Reyes came out, and when the order was repeated, Gonzalez came out. Wojewocki conducted a protective search, and he and his partner placed the subjects in custody. At the time of this arrest, Officer Fritz found a rifle leaning against a

wall in the area that Gonzalez and Reyes exited. Wojewocki testified that there were no other people in the school yard, and that it was completely dark in the area where he and his partner found Gonzalez and Reyes.

Gonzalez points out that the identity of the citizen who gave the police the information leading to their arrest remains unknown. He contends that the trial court was required to determine whether the information coming from the informant was based upon his firsthand knowledge. This, he says, was not done in the motion to quash arrest hearing, and that on the basis of the scant evidence adduced at that hearing, it was not proper for the judge to find that there was probable cause to arrest the defendants.

■■ A reviewing court, in passing upon a trial court's ruling that probable cause existed to arrest a defendant, may consider testimony adduced at trial as well as at the pretrial hearing. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, 1002, 418 N.E.2d 112.) Where evidence which establishes the legality of an arrest is received at trial prior to the introduction of the evidence which was the subject of the motion to suppress, the defendant cannot avail himself of any error made in this regard on the motion to suppress. (*People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808.) In the trial below, Officer Fritz testified to the facts surrounding Gonzalez' arrest before Gonzalez' statement was admitted and read to the jury. Therefore, we have considered both the trial testimony of Officer Fritz and the pretrial testimony of Officer Wojewocki in evaluating defendant's argument. Officer Fritz testified at trial that the citizen told them that he had seen two males run into a nearby school yard and that one of them was carrying a rifle and wearing a dark green coat, indicating that the information given to the policemen was from firsthand knowledge.

■■ Gonzalez also contends that the arresting officers were not justified in relying upon information received from the unidentified citizen informer. However, the officers were not relying solely upon information from this citizen. In addition, the officers had received reports of a shooting over the police radio. Police officers generally may act upon such information. (*People v. McElroy* (1976), 44 Ill. App. 3d 1047, 1050, 358 N.E.2d 1180.) When the officers entered the school yard, they found Gonzalez and Reyes hiding in an alcove in an area that was completely dark. Gonzalez was wearing a dark green coat. There were no other people in the yard and the rifle was found nearby. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a belief in a man of reasonable caution that an offense has been committed and that the person arrested has committed the offense. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228,

*cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.) We hold that there was ample evidence to establish probable cause.

Gonzalez also argues that his statements were not voluntarily given, noting that he had no prior experience with the law and he was only 17 years of age at the time of his arrest. In *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731, our supreme court stated:

> "Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. [Citation.] In making its decision the trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. [Citations.]" (53 Ill. 2d 62, 70.)

Gonzalez does not contend that he was physically abused, and there is no evidence in the record that his will was overcome at the time he confessed. (See *People v. Prim* (1972), 53 Ill. 2d 62, 70.) Testimony of witnesses who were present at Gonzalez' oral and written statements indicated that he had not been threatened, coerced or struck and that promises had not been made to him. In denying Gonzalez' motion to suppress statements, the trial court found that his statements were voluntary. This finding was not against the manifest weight of the evidence.

Next we consider Gonzalez' assertion that he was not adequately informed of his rights under *Miranda* because he was never advised of his right to consult with counsel prior to the interrogation. The record of the hearing on the motion to suppress indicates that at the fifth area police headquarters during the evening of February 23, 1976, Gonzalez received several advisements of his constitutional rights before making any statement, once from Investigator Schak of the Chicago police department and twice from Assistant State's Attorney Michael Robbins. In each he was told of his rights under *Miranda* including his right to have a lawyer present, and he indicated that he understood.

■■ Defendant states that under *Miranda* he had a constitutional right to have counsel present at the interrogation and the right to consult counsel prior to the interrogation. His position is that the admonitions of both Assistant State's Attorney Robbins and Investigator Schak were defective in that neither advised defendant of his right to counsel prior to the questioning. Mr. Robbins testified that he advised Gonzalez that he had a right to have an attorney present with him and that if he could not afford

an attorney, one would be provided for him free of cost. Investigator Schak testified that he advised Gonzalez of his right to counsel with these words: "You have the right to talk to a lawyer and have him present with you while you are being questioned \* \* \*. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one." In *Miranda*, the Supreme Court declared that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today." 384 U.S. 436, 471, 16 L. Ed. 2d 694, 722, 86 S. Ct. 1602, 1626.

An examination of the several sets of warnings given to Gonzalez prior to his being questioned reveals that he was fully informed of his constitutional rights, including his right to consult with counsel prior to questioning. *Miranda* does not specify the precise language to be used in advising a person of his constitutional rights. Rather it requires an intelligent conveyance of the rights set forth therein, not a ritualistic recital of meaningless words. (*People v. Prim* (1972), 53 Ill. 2d 62, 67.) Under the circumstances of the instant case, the words used to advise Gonzalez of his constitutional rights were sufficiently clear to convey the warnings prescribed by *Miranda*. (See *People v. Prim* (1972), 53 Ill. 2d 62, 68.) Furthermore, arguments similar to the instant argument have been rejected in other Illinois cases, including *People v. Sims* (1978), 58 Ill. App. 3d 668, 374 N.E.2d 1050, and *People v. Bunting* (1974), 18 Ill. App. 3d 99, 309 N.E.2d 316. We therefore conclude that the trial court did not err in denying Gonzalez' motion to suppress statements on the basis that he was not properly advised of his constitutional rights.

We now consider Gonzalez' remaining argument with respect to the admission of his statements that the trial court erred in conducting separate hearings before different judges on his motion to suppress statements and on his motion to quash arrest. A hearing on Gonzalez' motion to suppress statements was conducted before the Honorable Frank W. Barbaro on December 1, 1977. At this hearing the court considered the voluntariness of his statements and the adequacy of the *Miranda* warnings given to him. A hearing on Gonzalez' motion to quash arrest was conducted before the Honorable Arthur Cieslik on December 5, 1977. At this hearing the court determined that there was probable cause to arrest.

At the December 1, 1977, hearing before Judge Barbaro, the following conversation was had in open court:

> "THE COURT: So we get the record straight then, *we are proceeding only on the voluntariness and the Miranda warnings at this juncture on the motion. Is that correct, gentlemen?*
> MR. ANDREWS [counsel for Reyes]: Yes, we have agreed.

*MR. SUFFREDIN [counsel for Gonzales]: Yes.*

MR. ANDREWS: We have agreed that we will handle the probable cause question on the pre-trial motions that follow today." (Emphasis added.)

Gonzalez now contends that the separate hearings before different judges on the two motions was error because circumstances surrounding a person's arrest must necessarily be considered by a trial court in determining the voluntariness of any statements given while in custody. We, however, do not address the merits of this argument because we conclude that it has been waived. Gonzalez not only did not object to this procedure in the court below, but he expressly informed the court that the procedure was agreeable to him. Failure to present proper and timely objection in the trial court generally constitutes a waiver of error. *(People v. Adams* (1968), 41 Ill. 2d 98, 101, 242 N.E.2d 167.) Furthermore, Gonzalez' trial counsel did not raise this issue in the motion for new trial. The general rule is that "the failure by the defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review." *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

II

■■ Gonzalez next contends that the trial court erred in denying his motion for severance. That motion asserted, *inter alia*, that his co-defendants, Reyes and Murrillo, had given statements implicating him. At trial, the statements by Reyes and Gonzalez summarized above were read to the jury. Subsequently, the jury was admonished to consider against each defendant only the contents of his own statement. We conclude that the admission of Reyes' statement did not require severance, given the limiting instruction to the jury and the fact that Gonzalez' own statement was substantially similar to that of Reyes. *(People v. Colon* (1979), 69 Ill. App. 3d 1021, 387 N.E.2d 956.) Therefore, we hold that the trial court did not err in denying Gonzalez' motion to sever.

In this regard Gonzalez has argued that admission of Reyes' statement violated the principles announced by the United States Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. *Bruton* held that admission in a joint trial of an out-of-court statement by one co-defendant implicating a second co-defendant violates the latter's sixth amendment right to confront witnesses against him. However, Illinois courts have held that the *Bruton* rule is not violated when the defendant claiming the benefit of the rule has made a similar inculpatory statement which is admitted into evidence. *(People v. Rosochacki* (1969), 41 Ill. 2d 483, 493-94, 244 N.E.2d 136; *People v. Turner* (1980), 92 Ill. App. 3d 265, 270-71, 415 N.E.2d 1114; see also *Parker v.*

*Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132.) Since the extrajudicial statement of Gonzalez was substantially similar to the out-of-court statement of Reyes, we conclude that the principles announced in *Bruton* were not violated.

### III

■■ Gonzalez next contends that the trial court improperly limited his cross-examination of prosecution witness Thomas Stump. Prior to the commencement of the trial the State presented a motion *in limine* to restrict defense examination of this witness. Specifically, the State sought to preclude the defense from using the fact that Stump had been arrested on a burglary charge on May 27, 1977, and that the charge had been nolle prossed on June 2, 1977. Defendant contends the ruling of the trial court prevented defense counsel from demonstrating to the jury that the witness had an interest in avoiding prosecution for violating the law. The State points out that the burglary charge against Stump had been nolle prossed for more than six months before Stump testified and states the trial court properly exercised its discretion in limiting the cross-examination.

The scope of cross-examination is generally within the discretion of the trial court, but "the widest latitude should generally be allowed the defendant in cross-examination for the purpose of establishing bias." (*People v. Barr* (1972), 51 Ill. 2d 50, 51-52, 280 N.E.2d 708; *People v. Mason* (1963), 28 Ill. 2d 396, 403, 192 N.E.2d 835.) While evidence of an arrest or an indictment may not ordinarily be admissible to impeach credibility generally (*People v. Galloway* (1974), 59 Ill. 2d 158, 163, 319 N.E.2d 498), our supreme court, in *Barr*, has stated:

> "The accused has a right to question a witness concerning any matter which goes to explain, modify, or discredit what he said on direct examination [citations], and the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to indicate that his testimony might be influenced by interest, bias, or a motive to testify falsely. [Citation.]" 51 Ill. 2d 50, 51.

In *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852, our supreme court held that the Juvenile Court Act did not bar the disclosure of the juvenile records of a witness insofar as they might be relevant to the defendant's claim that the testimony of the State's principal witness was attributable to lenient treatment which he had received or had been promised. (54 Ill. 2d 253, 258.) The court stated that "a defendant is entitled to have the trier of the fact informed as to any promises of

leniency that may have been made to the witness, whether those promises related to the present offense or to other pending charges." 54 Ill. 2d 253, 257.

Gonzalez argues that the questioning precluded by the trial court would have been proper since it was designed to reveal illegal conduct on the part of Stump for which he could have been prosecuted and that the jury should have been informed of any deals he may have made with the prosecution, since they may demonstrate bias or motive. Gonzalez relies primarily upon *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. That case held that in a criminal case the defendant's right to confrontation requires that he be allowed to impeach the credibility of a crucial prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile delinquent.

We conclude that the trial court erred in not permitting defense counsel to cross-examine Stump as to the disposition of the burglary charge against him. This error, however, was harmless beyond a reasonable doubt.

Improper limitation of cross-examination by the defendant does not necessarily warrant reversal. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 556, 366 N.E.2d 914.) "[A]ny error in restricting the cross-examination of a witness whose testimony serves merely to buttress the prosecution, or on whose credibility alone the prosecution does not rest, may be deemed harmless." (*People v. Bingham* (1979), 75 Ill. App. 3d 418, 426, 394 N.E.2d 430; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 556.) The touchstone is whether the witness' testimony was crucial to the prosecution. If his testimony was crucial, then the restriction of cross-examination will have resulted in manifest prejudice and will require reversal. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1023, 420 N.E.2d 837; *People v. Bingham* (1979), 75 Ill. App. 3d 418, 425-26.) These principles were applied to a fact situation substantially similar to the facts of the instant case in *Bingham*. In that case, the trial court barred the defendant from inquiring on cross-examination about the fact that a prosecution witness (the victim) had been indicted for robbery, and the defendant argued that inquiry as to the indictment should have been permitted because the existence of an indictment shows bias arising out of a hope for leniency. The appellate court held that the trial court erred in not permitting an inquiry as to the indictment, but that reversal was not warranted. Reversal was not required because the witness' testimony was not crucial to the prosecution, given substantially similar testimony by several other occurrence witnesses and the defendant's own testimony.

In the instant case, Thomas Stump's testimony was not crucial to Gonzalez' convictions. Stump was not able to identify Gonzalez as one of

the assailants. Other witnesses, Robert Shaw and John Mikucki, were able to identify him. Furthermore, Gonzalez admitted firing the shots which killed Glover. Under the circumstances, we conclude that the restriction of cross-examination in the instant case was harmless beyond a reasonable doubt.

## IV

Gonzalez next contends that the trial court erred in allowing Dr. Mohammed Ikram, a pathologist, to testify as to the distance from which the fatal shot was fired. He asserts that although Dr. Ikram was qualified as a pathologist, there was no showing that he was qualified to give his opinion as to matters relating to ballistics and firearms.

At trial, Ikram was asked by the prosecutor whether he could ascertain how the victim was shot. Counsel for Gonzalez objected on the basis that Ikram was not a firearm's expert. The trial court sustained this objection. Subsequently, at side bar the court ruled that Ikram was qualified to testify as to whether or not the victim's wound was a contact wound. Following that ruling, Ikram testified that the wound inflicted was not a contact wound and that the shot had been fired from some distance away. He explained that a contact bullet would have burns surrounding it, that there would be cherry-colored discoloration under that tissue, and that in most instances carbon monoxide would be present around the wound. He also testified that his examination of the victim's wound exhibited none of these indicia of a contact wound. On cross-examination by counsel for Gonzalez, Ikram testified that the wound was not inflicted by a gun that was within three feet of the victim.

■■ "Expert testimony is admissible when experience and observation in a special calling gives the witness knowledge of a subject beyond that of persons of common intelligence and ordinary experience." (*People v. Wade* (1977), 51 Ill. App. 3d 721, 727, 366 N.E.2d 528.) A trial judge, in determining the admissibility of such testimony, is afforded wide latitude of discretion, and a reviewing court will not overturn his decision unless that decision was clearly and prejudicially erroneous. *People v. Wade* (1977), 51 Ill. App. 3d 721, 727; *People v. Aliwoli* (1976), 42 Ill. App. 3d 1014, 1019, 356 N.E.2d 891.

Dr. Ikram's testimony revealed that he was a physician licensed to practice medicine in Illinois and that he had several years of experience in the field of pathology. In February 1976, he was employed as a forensic pathologist by the Cook County coroner's office. As a forensic pathologist, he had performed approximately two hundred autopsies, and in the course of performing these autopsies, he had observed gunshot wounds. Given these circumstances, we conclude that the trial court did not abuse

its discretion in allowing Ikram to state his opinion that the wound inflicted upon the victim was not a contact wound.

## V

■■ Gonzalez next contends that the prosecution's closing argument requires reversal because the prosecution improperly made comments referring to facts not in the record and only within the personal knowledge of the prosecutors. We have reviewed the record with regard to the comments to which Gonzalez objects and have considered them in the context of the entire argument. We find no error.

A prosecutor has great latitude in closing argument (*People v. Hine* (1980), 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017), and arguments and statements made by a prosecutor which are based on facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument. (*People v. Halteman* (1956), 10 Ill. 2d 74, 83, 139 N.E.2d 286; *People v. Hine* (1980), 88 Ill. App. 3d 671, 679.) We conclude that the prosecution's comments in the instant case were proper because they were either based on facts appearing in evidence or on legitimate inferences drawn therefrom.

## VI

Gonzalez' next argument is that the trial court erred in refusing to instruct the jury as to the lesser included offenses of voluntary manslaughter and involuntary manslaughter. At trial, he tendered voluntary manslaughter instructions based on sudden and intense passion resulting from serious provocation and involuntary manslaughter instructions.

■■ A manslaughter instruction tendered by the defendant in a homicide case must be given if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 500, 384 N.E.2d 373.) Voluntary manslaughter has been defined as an unjustified killing committed while under sudden and intense passion resulting from serious provocation. Serious provocation, in turn, is defined as conduct sufficient to excite an intense passion in a reasonable person. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a).) In *People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451, the court stated that the only types of conduct recognized as serious provocation are "substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property." (*People v. Strong* (1979), 79 Ill. App. 3d 17, 24, 398 N.E.2d 216.) Gonzalez asserts that an instruction on this type of voluntary manslaughter was proper because the statements of both defendants contained assertions that they were being pursued by several youths when

the shots were fired. He also asserts that the testimony of David Shields corroborated this evidence. Although Reyes' statement does indicate that he and Gonzalez were being chased, Gonzalez' statement does not. The jury was instructed not to consider Reyes' statement against Gonzalez. Thus, when considering the evidence against Gonzalez, the jury would have no evidence of a "chase," only evidence that witnesses Shaw and Mikucki followed the two Puerto Rican males. We conclude that the jury could not have found that the evidence introduced at trial established voluntary manslaughter under section 9—2(a). The record fails to disclose evidence of the sort of provocation which would have justified the voluntary manslaughter instructions tendered by Gonzalez. In other words, there was not any evidence which, if believed by the jury, would indicate that Gonzalez acted upon serious provocation which would have excited a reasonable man to intense passion.

Gonzalez also argues that the trial court erred in refusing to instruct the jury as to involuntary manslaughter. We have reviewed the record and conclude that there is no evidence in this case which would establish involuntary manslaughter, and that Gonzalez was not entitled to an involuntary manslaughter instruction.

## VII

Gonzalez' last contention is that the evidence introduced at trial was not sufficient to sustain his convictions of murder and attempt armed robbery. We disagree. A reviewing court will not disturb a jury's determination of guilt unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Gonzalez asserts that there were numerous and serious inconsistencies among the testimonies of various State witnesses, but he does not specify these inconsistencies in his brief. In any event, where evidence is conflicting, it is the peculiar prerogative of the trier of fact to ascertain the truth. (*Manion.*) Thus, we conclude that Gonzalez' last contention must fail.

## VIII

■■ Defendant Reyes' first contention is that he was not proved guilty beyond a reasonable doubt of attempt armed robbery because he neither performed himself, nor was he legally accountable for, any act which constituted a substantial step toward the commission of armed robbery.

To commit the offense of attempt armed robbery, one must perform a substantial step toward taking property from the person or presence of another by the use of force or threat of imminent use of force while armed

with a dangerous weapon. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4(a), 18—1, 18—2.) Mere preparation to commit an offense does not constitute a "substantial step" for purposes of the attempt statute. (*People v. Walters* (1979), 69 Ill. App. 3d 906, 913, 387 N.E.2d 1230.) In our opinion the evidence proved Reyes had taken a "substantial step" in furtherance of the planned robbery. In his statement, Reyes admitted that he and Gonzalez planned to wait for the people in the drugstore to come out and then to hold them up with Gonzalez' rifle. He admitted further that he and Gonzalez went to that drugstore. Prosecution witnesses identified Reyes as one of the two Puerto Rican males observed walking past the drugstore.

Reyes contends that since he and Gonzalez never entered the drug-store where the victims were, he could not be found guilty of attempt armed robbery. We reject this argument for two reasons. First, Reyes in his statement said the plan was to wait for their victim to exit the drugstore. It did not contemplate entry into that store. Second, if the intended victim of an armed robbery is inside of a building, entry into that building is not required for a finding of attempt armed robbery. *People v. Burleson* (1977), 50 Ill. App. 3d 629, 365 N.E.2d 1162.

We find the opinion in *Burleson* instructive. In that case, the defendant and another person, Brown, agreed to rob a bank. They performed various preparatory acts, and then on the day they had agreed to effectuate their plan, they approached the bank building. In reviewing the evidence the court said:

> "Here, the defendant and Brown did not enter the bank building on [date], although they were in possession of a shotgun, suitcase and disguises which were in place when they approached the bank building. We find these acts sufficient to constitute a 'substantial step' toward the commission of an armed robbery in the bank." (50 Ill. App. 3d 629, 633.)

Reyes' attempts to distinguish the instant case from the factual situation presented in *Burleson* where a man bolted the door from the inside as the defendant and Brown neared the bank, thereby preventing them from entering. This fact, however, was not essential to the decision in *Burleson*. Rather, *Burleson* stands for the principle that a substantial step has been taken when an actor possesses the materials necessary to carry out the crime, at or near the place contemplated for its commission. Applying the principles announced in *Burleson*, we conclude that the actions of Reyes and Gonzalez in going to and walking past the drugstore while in possession of the rifle constituted a substantial step. We also conclude that there was sufficient credible evidence in the record for the jury to find Reyes guilty of attempt armed robbery beyond a reasonable doubt.

## IX

Reyes also contends that he was denied his constitutional right to effective assistance of counsel at his sentencing hearing when the trial court refused to continue the hearing in aggravation and mitigation so that Reyes' trial counsel could appear on his behalf. He relies upon both the sixth amendment to the Federal Constitution and article one, section eight of the Illinois Constitution.

■■ On December 16, 1977, the jury returned its verdict finding Reyes guilty of attempt armed robbery; judgment was entered on this verdict, and the matter was continued for sentencing until January 23, 1978. A sentencing hearing was, in fact, held on January 30, 1978. At this hearing the court stated on the record that the matter had been continued from the previous week and that the court had indicated at that time that it would not consider any continuance in this matter. Further, the record shows that presentence investigations were presented to the respective attorneys on January 23, 1978. On January 30, 1978, attorney Georgette Panutsos announced to the court that she was appearing on behalf of Francis Andrew, Reyes' trial counsel. At this hearing, Ms. Panutsos filed post-trial motions on behalf of Reyes. She also requested a continuance of Reyes' sentencing hearing because Andrew was unable to be present. She said she was not familiar with the case and could not present evidence in mitigation on behalf of Reyes. The trial judge refused to grant a continuance and referred to his earlier statement that he would not consider any motion to continue. The judge stated further that he desired to enter sentence prior to the effective date of the new sentencing act, February 1, 1978, and that he realized Andrew was on trial in Federal court. Counsel for Gonzalez, Marvin Glass, interjected that Andrew would be finished in Federal court on the morning of January 31, 1978, and asked the court if it would continue the matter one day. The trial judge refused, saying this would force him to travel from the Civic Center to the Criminal Courts Building and place his schedule in disarray. Following the court's denial of her request for a continuance, Panutsos stated that she had nothing to present in mitigation.

A motion for continuance has not been improperly denied unless it appears that the refusal to grant additional time has in some way embarrassed the accused in the preparation of his defense and thereby prejudiced him. (*People v. Canaday* (1971), 49 Ill. 2d 416, 427, 275 N.E.2d 356.) In *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229, our supreme court discussed the statutory provisions relating to motions for continuance and the scope of review of a trial court's decision to grant or deny a continuance. The court stated:

> "By statute in Illinois, the decision to grant or deny a motion for continuance lies in the sound discretion of the court (Ill. Rev. Stat.

1973, ch. 38, par. 114—4(e)). * * * Our review of the trial court's judgment in balancing these factors focuses initially on the question of whether the decision of the court amounts to an abuse of discretion. [Citation.] The determination of whether the denial of a continuance violates a substantive right of the accused must turn on the particular facts of each case. [Citation.]" 79 Ill. 2d 341, 347-48.

Resolution of the issue here also requires an analysis of a defendant's constitutional right to counsel. Sentencing is a critical stage of a criminal proceeding at which a defendant is entitled to the effective assistance of counsel. (*People v. Rivers* (1978), 61 Ill. App. 3d 376, 384, 377 N.E.2d 1245; *People v. Campbell* (1976), 37 Ill. App. 3d 511, 514, 346 N.E.2d 441.) Reyes was deprived of effective assistance of counsel in the case at bar. Although a lawyer was present, Reyes was forced to a hearing without his trial counsel, and he was clearly prejudiced thereby. In imposing sentence upon him, the trial judge made reference to his conduct at trial as follows:

"With reference to Mr. Reyes, you not only participated in this act, but *there was an episode that occurred during the trial which—which never became a part of the record, but which this court has been well aware of with reference to your conduct, with reference to what you have done. You know exactly what I am speaking of, with reference to the narcotics that was involved in here in the episode this court was put upon.* And, accordingly, the court is sentencing you for the crime of attempted armed robbery to the Adult Division of the Department of Corrections of the State of Illinois for a period of not less than 2 years nor more than 6 years." (Emphasis added.)

Attorney Panutsos was unfamiliar with the case, and, therefore, unfamiliar with this incident alluded to by the judge and unable to give any explanation.

Although the trial judge's frustration at trial counsel's absence is understandable under the facts presented, nevertheless we conclude that the trial court abused its discretion in denying a continuance, and proceeding with the sentencing without him. Reyes' right to a fair sentencing hearing required the granting of the requested one-day continuance. The sentence imposed upon Reyes must be vacated.

For the aforementioned reasons, the convictions of both defendants are affirmed but the order imposing sentence upon Reyes is reversed and the cause of Reyes is remanded for a new sentencing hearing.

Affirmed in part, reversed and remanded in part.

RIZZI, P. J., and McNAMARA, J., concur.