THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TROY A. DORSEY, Defendant-Appellant.

Fourth District   No. 4—03—0791

Opinion filed December 1, 2005.

APPLETON, J., specially concurring.
STEIGMANN, J., dissenting.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

On February 25, 2003, a jury convicted defendant, Troy A. Dorsey, of unlawful possession of a methamphetamine-manufacturing chemical with the intent to manufacture 30 to 150 grams of a substance containing methamphetamine. The trial court sentenced defendant to eight years' imprisonment in the Illinois Department of Corrections. Defendant appeals, alleging that the State did not prove beyond a reasonable doubt that he could have manufactured 30 to 150 grams of methamphetamine with the amount of pseudoephedrine pills law-enforcement officers found on his person. We affirm as modified and remand the case to the trial court with directions to reduce defendant's conviction to possession of a methamphetamine-manufacturing chemical with the intent to manufacture less than 15 grams of a substance containing methamphetamine and resentencing thereon.

## I. BACKGROUND

On March 30, 2001, Macon County State's Attorney Scott A. Rueter charged defendant by information with two counts of unlawful possession of a methamphetamine-manufacturing chemical with intent to manufacture methamphetamine. Count I alleged that defendant possessed pseudoephedrine with the intent to manufacture 30 to 150 grams of a substance containing methamphetamine, a Class X felony carrying a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 570/401(a)(6.6)(A) (West Supp. 2001). Count II alleged that defendant possessed pseudoephedrine with the intent to manufacture less than 15 grams, a Class 2 felony. 720 ILCS 570/401(d—5) (West Supp. 2001).

Defendant's jury trial was held on February 24 and 25, 2003. James Cottrell, a loss-prevention officer at a Wal-Mart in Decatur, testified that on March 1, 2001, he notified law enforcement that he saw defendant, accompanied by Tammy Garland, purchase three boxes of cold pills, leave the store, and get into a brown van. Sometime later, defendant exited the van, put a Wal-Mart bag in the garbage can in the front of the store, and went back into the store. Cottrell instructed store employees to collect the garbage bag and take it to his office. Todd Kilby of the Illinois State Police recovered empty boxes and blister packs of cold pills, as well as the receipt for the purchase, from

a Wal-Mart bag in the garbage. Defendant left the store for the second time carrying a large plastic tote.

Decatur police officer Richard Hughes testified that he had been called to do surveillance of defendant and Garland and saw them leave the Wal-Mart parking lot in a brown van. Law-enforcement officers observed Garland drive the van to the Mt. Zion Plaza Wal-Mart. Decatur police officer Carl Carpenter testified that he saw defendant go into the store and come back out carrying a can of Coleman fuel and another Wal-Mart bag. Garland then drove defendant to a Dollar General, where Hughes and Carpenter saw defendant go into the store and come back out carrying some bulky Dollar General bags.

After defendant and Garland left the Dollar General parking lot, Decatur police officers pulled the van over for a traffic .violation. Carpenter arrived, spoke with defendant, and conducted a consensual search of defendant's person. Carpenter testified that he felt something inside defendant's pants. James Root of the Illinois State Police found in defendant's crotch area a pseudoephedrine box containing several blister packs of pseudoephedrine pills and many loose pseudoephedrine pills. Officers recovered 552 pseudoephedrine pills in all. Carpenter searched the van and found 11 glass containers inside the Dollar General bags, a can of Coleman fuel, and a bag of ice melt.

Carpenter and Terry Eck of the State Police Task Force both testified that they interviewed defendant at the law-enforcement center. They stated that defendant told them that he and a friend, Billy Morrison, had decided to collect 5,000 pseudoephedrine pills, 5 cans of Coleman fuel, and a couple of packages of lithium batteries to manufacture 100 grams of methamphetamine. Defendant said that he had gotten six to eight packages of pseudoephedrine at one store and a couple of packages at another and that the Coleman fuel and glass jars were to be used in the production of methamphetamine.

The trial court qualified Kilby as an expert after he outlined his training and experience in the areas of methamphetamine manufacture and distribution, including his involvement in 500 methamphetamine investigations. Kilby testified that he has actually "cooked" methamphetamine as part of his training using the lithium-ammonia method, the most commonly used method in the area. He had seen up to a 90% yield rate, meaning 90% of the pseudoephedrine is converted to methamphetamine. Based on that rate, he calculated that 552 pseudoephedrine pills could yield up to 14.994 grams of methamphetamine. Kilby also stated that a study conducted by two people employed by the Iowa Division of Criminal Investigation regarding yield rate is much disputed within the forensic field. Kilby believed that defendant

possessed the 552 pseudoephedrine pills with the intent to manufacture methamphetamine.

Defendant offered the expert testimony of Terry Martinez, Ph.D., an associate professor of pharmacology and toxicology at the St. Louis College of Pharmacy. He identified the 552 pills offered into evidence by the State as 30-milligram tablets of Equate pseudoephedrine. Martinez testified that with a 100% yield rate, which no chemist could achieve, the most someone could produce from that amount of pseudoephedrine is 15.25 grams of methamphetamine. Martinez stated that Iowa chemists had tested a number of recipes and had gotten from 15% to 63% yield rates and that the Iowa study was the best. Using the 63% rate, 552 pseudoephedrine pills would yield 10.43 grams of methamphetamine.

The jury found defendant guilty of unlawful possession of a methamphetamine-manufacturing chemical with the intent to manufacture 30 to 150 grams of a substance containing methamphetamine. Defendant filed a posttrial motion, arguing in part that the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt because the State did not prove that defendant could manufacture more than 30 grams of methamphetamine from the 552 pseudoephedrine pills. The trial court denied defendant's motion. This appeal followed.

## II. ANALYSIS

■ Under the Illinois Controlled Substances Act (Act), it is "unlawful for any person knowingly to *** (ii) possess any methamphetamine[-]manufacturing chemical listed in paragraph (z—1) of [s]ection 102 with the intent to manufacture methamphetamine or the salt of an optical isomer of methamphetamine or an analog thereof." 720 ILCS 570/401 (West Supp. 2001). Section 102 defines "methamphetamine[-]manufacturing chemical" to include pseudoephedrine. 720 ILCS 570/102(z—1) (West Supp. 2001). The Act provides that a person who violates section 401 is subject to a term of imprisonment of "not less than 6 years and not more than 30 years for the possession of any methamphetamine[-]manufacturing chemical *** with intent to manufacture 30 grams or more but less than 150 grams of any substance containing methamphetamine, or salt of any optical isomer of methamphetamine, or an analog thereof." 720 ILCS 570/401(a)(6.6)(A) (West Supp. 2001). A person who violates section 401 where less than 15 grams of methamphetamine is involved is guilty of a Class 2 felony, for which a sentence of not less than 3 years

and not more than 7 years is possible. 720 ILCS 570/401(d—5) (West Supp. 2001); 730 ILCS 5/5—8—1(a)(5) (West Supp. 2001).

Defendant first argues that the State did not prove an element of the charged offense beyond a reasonable doubt. Defendant correctly states that the prosecution had to prove beyond a reasonable doubt that he intended to manufacture 30 to 150 grams of methamphetamine, but no one could produce 30 to 150 grams of methamphetamine from the amount of pseudoephedrine pills found on his person.

We review a challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267 (2005). We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. *Collins*, 214 Ill. 2d at 217, 824 N.E.2d at 267-68. If a court determines that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, the defendant's conviction must be reversed. *People v. Woods*, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005). There must be *some* evidence giving rise to a reasonable inference of the defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime. *People v. Laubscher*, 183 Ill. 2d 330, 335-36, 701 N.E.2d 489, 491 (1998).

The State concedes that defendant did not possess enough pseudoephedrine to manufacture 30 grams or more of methamphetamine; there is no question that defendant could not have actually made 30 or more grams of methamphetamine from 552 pseudoephedrine pills. However, it argues it only needed to prove that defendant possessed the pseudoephedrine with the *intent* to manufacture between 30 and 150 grams of a substance containing methamphetamine. The State relies on Carpenter's and Eck's testimony that defendant told them that he and a friend had decided to collect 5,000 pseudoephedrine pills to make 100 grams of methamphetamine.

Other cases before this court have involved testimony regarding the amount of methamphetamine that one could produce from a given amount of pseudoephedrine pills actually possessed by particular defendants. The circumstances of this case are unique, however, in that the jury convicted defendant of intent to manufacture an amount of methamphetamine he could not have possibly produced from the pseudoephedrine in his possession. Whether the State proved defendant's guilt beyond a reasonable doubt depends, then, upon whether defendant's possession of 552 pseudoephedrine pills and his

statement that he wanted to make 100 grams of methamphetamine are sufficient to establish that he intended to manufacture 30 to 150 grams.

It is not necessary that a person possessing methamphetamine-manufacturing chemicals actually manufacture or deliver methamphetamine before an offense is committed. It is only necessary that the person possessing those chemicals do so "with the intent to manufacture methamphetamine." 720 ILCS 570/401(ii) (West Supp. 2001). Intent to manufacture is clearly a substitute for actual manufacture or delivery. But how is the offense classified, how is the penalty established, when there is no manufacture, only an intent to manufacture? Intent is a rather elastic concept. Every burglar would like to steal a million dollars but most of them are unable to come close to that amount. If the key in this case is intent, could possession of one pseudoephedrine pill have supported a conviction of intent to manufacture more than 30 grams of methamphetamine? If defendant had been arrested before he purchased any materials, could there be a conviction of intent to manufacture more than 30 grams? See *People v. Stanley*, 146 Ill. App. 3d 912, 918-19, 497 N.E.2d 496, 500 (1986) (there must be evidence to satisfy the court that a confession was not the product of imagination).

Though no authority directly on point exists, the law of attempt provides some guidance. Illinois courts differentiate between mere preparation and a substantial step toward committing an offense. See *People v. Terrell*, 99 Ill. 2d 427, 433, 459 N.E.2d 1337, 1340 (1984); *People v. Burleson*, 50 Ill. App. 3d 629, 632, 365 N.E.2d 1162, 1165 (1977). Determining whether an act constitutes a substantial step "can only be accomplished by evaluating the facts and circumstances of the particular case." *Terrell*, 99 Ill. 2d at 433, 459 N.E.2d at 1340. "The essential question *** is whether, given the intent to commit a specific offense, the defendant performed acts bringing him in ' " 'dangerous proximity to success' " ' in carrying out his intent." *People v. Morissette*, 225 Ill. App. 3d 1044, 1046, 589 N.E.2d 144, 146 (1992), quoting *Terrell*, 99 Ill. 2d at 434, 459 N.E.2d at 1341, quoting *People v. Paluch*, 78 Ill. App. 2d 356, 360, 222 N.E.2d 508, 510 (1966), quoting *Hyde v. United States*, 225 U.S. 347, 388, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 (1912) (Holmes, J., dissenting). For example, someone has taken a substantial step when he or she " 'possesses the materials necessary to carry out the crime, at or near the place contemplated for its commission.' " *Terrell*, 99 Ill. 2d at 435, 459 N.E.2d at 1341, quoting *People v. Reyes*, 102 Ill. App. 3d 820, 835, 429 N.E.2d 1277, 1290 (1981).

■ In this case, defendant only had 552 pseudoephedrine pills, less than half of the amount defendant would need to produce even 30 grams of methamphetamine using the State's generous 90% yield rate. (Notably, defendant's statement that he needed 5,000 pills to make 100 grams of methamphetamine reveals that he only expected a 66.3% yield rate.) He had one can of Coleman fuel, not the five cans that Carpenter and Eck testified defendant told them he needed. Further, though Kilby testified that he believed defendant possessed the 552 pseudoephedrine pills with the intent to manufacture methamphetamine, he did not claim to know that defendant intended to manufacture more than 15 grams of methamphetamine.

Perhaps the alert Wal-Mart employee and the efforts of law enforcement prevented defendant from acquiring more pseudoephedrine and other necessary supplies to manufacture a full 100 grams of methamphetamine. But perhaps defendant would have taken the 552 pseudoephedrine pills and made 14.994 grams or less before setting out to purchase more pseudoephedrine. Without evidence establishing a "substantial step," defendant cannot be punished for intent to manufacture a greater amount.

In response to the dissent, it is clear that a defendant can be convicted of unlawful possession of a methamphetamine-manufacturing chemical with intent to manufacture methamphetamine if he is arrested at an early stage in his endeavor. The question presented in this case is the classification of offenses: whether more evidence is required to convict a defendant of intent to manufacture 30 to 150 grams than is required to convict a defendant of intent to manufacture less than 15 grams, or whether we just leave the matter up to the jury.

■ Finally, defendant argues that his trial counsel was ineffective because he did not request a *Frye* hearing (see *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)) on the method the State's expert used to calculate methamphetamine weight where no methamphetamine was manufactured. This contention is without merit. Defendant's own expert testified that the procedures to produce methamphetamine "are very similar to other chemical procedures. There is nothing unique about them. This is simple chemistry." Additionally, the State and defense experts agreed that defendant could not have manufactured 15 grams or more of methamphetamine from the 552 pseudoephedrine pills; they only disagreed over the appropriate yield rate.

We therefore direct the trial court to reduce the conviction for possession of pseudoephedrine with intent to manufacture 30 to 150 grams of a substance containing methamphetamine to possession of

pseudoephedrine with the intent to manufacture less than 15 grams of a substance containing methamphetamine.

## III. CONCLUSION

For the reasons stated, we affirm as modified and remand this case with directions to reduce the conviction on count II to possession of pseudoephedrine with intent to manufacture less than 15 grams of a substance containing methamphetamine and resentence defendant thereon.

Affirmed as modified and remanded with directions.

JUSTICE APPLETON, specially concurring:

I concur with the decision of the majority but write separately to address one point addressed by its opinion. This issue has been previously addressed by this court in decisions issued pursuant to Rule 23 (166 Ill. 2d R. 23) and not previously published.

In prosecutions charging the possession of precursor substances with the intent to produce methamphetamine, the question will always arise of how much methamphetamine could be produced from the recovered quantity of pseudoephedrine. From the record in this case, as well as numerous others before this court, it is abundantly clear that a formula exists for the conversion of precursor material into a quantity of methamphetamine. That formula is commonly accepted by the scientific community and, in essence, is operable by the application of mathematics. The only variables in the formula are the skill of the "cookers," the equipment used by them, and the location of the production.

It is these variables that produce the plethora of different conversion ratios of raw material to product—ranging from .92 to .40—seen by this court as well as other state and federal courts throughout the country. The gravamen of the offense, possession with the intent to manufacture a certain amount, should not depend on a variable either outside the control of the defendant (as here, where defendant was only a procurer of precursors for another) or within the control of the ultimate manufacturer. The amount of end product should be charged and proved by the State based on a conversion formula based on what is possible to be produced, *i.e.*, the maximum, regardless of extraneous skill or environmental factors.

The conversion formula is what it is—the maximum amount that can be produced without regard of the argued ineptitude of the person who could be charged with transforming a healthful product into

poison. See *People v. Redenbaugh*, No. 4—03—0667 (June 23, 2005) (unpublished order under Supreme Court Rule 23).

Based upon this analysis, the oft-debated Iowa study of the potential yield of methamphetamine from the precursor drug pseudoephedrine is of no usefulness in the State of Illinois. To hold otherwise would involve the courts of this state in a qualitative analysis of the experimental and environmental variables involved in the production of methamphetamine, an exercise that is both unnecessary and unwise.

JUSTICE STEIGMANN, dissenting:

Because I do not agree that this court should reduce defendant's conviction of possession of a methamphetamine-manufacturing chemical with the intent to manufacture 30 to 150 grams of a substance containing methamphetamine to the lesser offense of possession of a methamphetamine-manufacturing chemical with the intent to manufacture less than 15 grams of a substance containing methamphetamine, I dissent. The crux of this offense is defendant's *intent*, not his *ability*, to commit the crime charged. The majority interprets section 401(a)(6.6)(A) to include an additional element—namely, that a defendant possess not just the intent to manufacture 30 to 150 grams of methamphetamine, but that he also have the present ability to do so. Thus, the fact that defendant, at the time of his arrest, did not possess enough of the necessary chemicals to manufacture 30 to 150 grams of a substance containing methamphetamine simply does not matter.

Usually, the trier of fact is called upon to determine a defendant's intent from the circumstances surrounding his conduct. However, in this case, the State presented direct evidence regarding defendant's intent through the testimony of police officers Carpenter and Eck. They testified that defendant told them that he and a friend were going to gather the necessary ingredients to manufacture 100 grams of methamphetamine. In light of this testimony, I fail to see how this court can conclude that no reasonable juror, viewing this evidence in the light most favorable to the State, could find that the State had proved defendant guilty beyond a reasonable doubt of the specific intent as charged—that is, to manufacture 30 to 150 grams of a substance containing methamphetamine.

In this time of concern about terrorism, it is easy to imagine a case in which a defendant is charged with possession of explosive equipment with the intent to blow up a building and kill people. (For purposes of this hypothetical, it does not really matter if the charge would be attempted murder or some other offense in the criminal code

that would best fit these facts.) Assume in this hypothetical that, at the time of his arrest, the defendant was in possession of some bomb-making equipment but, *at that specific moment in time*, he did not have all he needed for a working bomb because he had not yet acquired blasting caps. Assume further that he told two police officers that the reason he had this equipment was because he intended to make a bomb to blow up a governmental facility and kill the people inside. Under these circumstances, I do not believe any court would set aside his conviction merely because at the time of his arrest the defendant did not possess *all* he needed to make a working bomb.

I believe this scenario applies to the case before us. Defendant had some of the makings for methamphetamine but, at the time of his arrest, did not yet possess all he needed to make as much methamphetamine as it was clearly his intent to make. If the jury believed the testimony of the officers (as it was entitled to) that defendant intended to manufacture 100 grams of methamphetamine, then the only conclusion to be drawn from the circumstances of this case is that the police arrested him before he was able to obtain all the chemicals needed to meet his goal. This good police work does not reduce defendant's culpability—or criminal liability—for the crime he was charged with and intended to commit.